NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ERIC ARNOLD,**

    **Plaintiff,**

  **v.**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

    **Defendant.**

Civ. No. 12-cv-07087 (WJM)

**OPINION**

---

**WILLIAM J. MARTINI, U.S.D.J.:**

  Plaintiff Eric Arnold brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final determination denying his application for Social Security Disability Benefits. For the reasons that follow, the Commissioner's decision is **VACATED** and **REMANDED**.

## I. LEGAL STANDARDS

### A. The Five-Step Sequential Analysis

  Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to

receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work ("PRW"). *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B.    Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II.    BACKGROUND

Eric Arnold ("Plaintiff") is a forty-eight-year-old male who is currently unemployed.  He studied carpentry at a technical high school and has prior work history in carpentry and construction.  Tr. 29-30, 40-41.  Plaintiff last worked for Lowe's.  His job there began in 2006.  He was initially employed as a commercial sales representative, designing decks and buildings for customers and helping them pick out materials. Tr. 31.

On January 7, 2007, Plaintiff was loading a customer's S.U.V. in his capacity as a Lowe's employee. Tr. 33. While Plaintiff was leaving the vehicle, the customer closed the hatchback on top of Plaintiff's head. *Id.* Plaintiff testified that he became unstable, sat down, and could not stand up afterwards. *Id.* Two days later, Plaintiff sought treatment at Doctor's Care Center. Tr. 333. X-Ray's, a CAT scan, and an MRI, all taken between January 10 and February 24, 2007, revealed disc herniation

at C3-4 and C4-5, with disc ridge complexes at C3-4 and C4-5, thecal sac indentation, and disc bulging and angulation at C2-3. Tr. 11-12, 328-329. On May 31, 2007, Plaintiff underwent a C3-4 and C4-5 discectomy with anterior cervical fusion and iliac graft. Tr. 207. Plaintiff's recovery from surgery kept him out of work at Lowe's for about nine months. Tr. 14.

Lowe's attempted to accommodate Plaintiff's post-injury limitations. Tr. 36. Initially, Lowe's placed him in a desk job at the front office, where he answered phones, worked on a computer, and did filing. Tr. 37. But he reported that after sitting at a desk for an hour, his shoulders, neck, and arms became too stiff to move, and the stiffness made it too hard to look at the computer screen. Tr. 37. He only worked in this position for a week or two. *Id.* Lowe's then moved Plaintiff to a part-time "light duty" position on the sales floor because he thought he would feel better if he could "walk and do other things." Tr. 39. The job required assisting customers. Plaintiff performed this job for about a year. Tr. 39. When doing this job, the pressure on his body caused by climbing, reaching, bending, or picking up merchandise made him dizzy, lightheaded, stiff, and fatigued. Tr. 38-39. Feeling he would hurt himself if he continued, Plaintiff left Lowe's in 2009 and has not worked since. Tr. 38-39.

Plaintiff filed an application for disability benefits on October 14, 2009. Tr. 193. In the application, Plaintiff alleged a disability stemming from the January 7, 2007 neck injury and a disability onset date of July 2, 2009. *Id*; Tr. 102. Plaintiff's date last insured ("DLI") was December 31, 2009.

Plaintiff's application was initially denied on December 9, 2009, and it was again denied on reconsideration on March 1, 2010. *Id*; Tr. 108. On April 16, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 112. An initial hearing was held on April 28, 2011, and a supplemental hearing was held on July 21, 2011. The ALJ affirmed the denial on July 27, 2011, and the Appeals Council denied a request for review on September 29, 2012. Tr. 1, 6. Plaintiff timely appeals to the District Court.

### A. Summary of the Record

The record includes medical records from Plaintiff's treating physicians, as well as reports from examining physicians. It also includes testimony from Plaintiff, the state's medical examiner Dr. Martin Fechner, and vocational expert Rocco Meola. Moreover, the record includes documentation from Plaintiff's Worker's Compensation claim.

Plaintiff's primary complaints are severe pain and stiffness of the neck. Additionally, when he wakes up in the morning, Plaintiff experiences headaches that last for about two hours. Tr. 42.

On May 31, 2007, Doctors Phair and Rosenblum, Plaintiff's surgeons, performed C3-4 and C4-5 discectomy with anterior cervical fusion and iliac graft. Tr. 262. Plaintiff did well with the surgery, and he continued to follow up with the treating physicians until about November 2007. *See* Tr. 266. The treating physicians opined that, although the Plaintiff had pain and stiffness, no neurological problems were apparent, and the Plaintiff was recovering. Tr. 17, 266, 312. Moreover, Dr. Phair indicated on September 18, 2007 that Plaintiff would be able to return to light duty. Tr. 314-315.

The record also contains reports from independent medical examiners Dr. Dennis and Dr. Potashnik. Dr. Dennis examined Plaintiff on June 23, 2008. Tr. 393. Dr. Dennis reviewed the treating physicians' reports and concluded that the surgery was necessary and successful. Tr. 404-07. He noted that Plaintiff was "one of the most honest, credible, straightforward and simplest evaluations" he had the "pleasure of doing for some time." Tr. 394. He concluded that Plaintiff was stable but that his prognosis was poor. Tr. 408.

Dr. Potashnik examined Plaintiff about 18 months after Dr. Dennis. Plaintiff told Dr. Potashnik that he was "doing better" after the surgery, but that the pain "recurred several months later." Tr. 409. Plaintiff told Dr. Potashnik that the pain was "severe" and prevented him from working. Tr. 409. On examination, Dr. Potashnik noted shooting pain during some of the tests he performed. Tr. 410. Dr. Potashnik concluded that Plaintiff "may be limited in activities of heavy lifting." Tr. 410.

The record also contains the opinion of Morris Horwitz, M.D. – a forensic examiner whom Plaintiff hired. Dr. Horwitz examined Plaintiff on or about April 15, 2011. Tr. 485. He provided Plaintiff with a number of orthopedic diagnoses, including post-traumatic headaches. Tr. 488. He opined that Plaintiff does not have the requisite RFC for PRW. Tr. 488.

The Social Security Administration paid for the expert testimony of Dr. Fechner, an internist. Tr. 73. Dr. Fechner testified that he had reviewed the entirety of Plaintiff's record. Tr. 73. Based on this review, he believed that Plaintiff was capable of doing light work. Tr. 76-77. He testified that Plaintiff is capable of up to forty-five degrees of neck rotation to each side (eighty to ninety degrees is normal),

and forty degrees of flexion[1] (sixty degrees is normal). Tr. 77. Moreover, Dr. Fechner opined that Plaintiff's alleged headaches did not present a serious condition. Tr. 88.

The ALJ asked vocational expert ("VE") Rocco Meola about the vocational limitations of three hypothetical claimants. Tr. 92. The first hypothetical claimant had Plaintiff's background and experience but could turn his head only fifteen degrees, with zero degrees flexion. *Id.* The VE testified that this claimant could not perform any jobs in the national economy. Tr. 93. The second hypothetical claimant had Plaintiff's background and experience, but with forty degrees rotation to the right, forty-five degrees rotation to the left, and forty degrees flexion. Tr. 93. The VE stated that such a person could perform several jobs available in the national economy. Tr. 93-94. The third hypothetical claimant was the same as the second, except that the third hypothetical claimant could only turn his head occasionally.[2] Tr. 95-96. The VE testified that there were no jobs that this person could perform. Tr. 96.

## B. The ALJ's Decision

Administrative Law Judge Michal L. Lissek made the following findings. At step one, the ALJ determined that between July 2, 2009, and December 31, 2009, Plaintiff did not engage in substantial gainful activity. Tr. 15. At step two, the ALJ determined that Plaintiff's cervical spine impairments were a severe impairment, but his headaches were not a severe impairment. *Id.* The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments. *Id.*

Based upon a review of the record as a whole, the ALJ found at step four that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). Tr. 16. Further, Plaintiff can rotate his head forty degrees to the right and forty-five degrees to the left, with forty degrees flexion. *Id.* Additionally, the ALJ found at step four that Plaintiff did not have the RFC to perform PRW. Tr. 18-19. Finally, at step five, the ALJ found that, given Plaintiff's RFC, background, education, and experience, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 19. Therefore, the ALJ determined that Plaintiff is not under a disability. Tr. 20.

---

[1] "Flexion" means bending. *Taber's Cyclopedic Medical Dictionary* 808 (20th ed.).
[2] "Occasionally" was defined as one-third of the workday.

## III.   DISCUSSION

Plaintiff's appeal raises three germane issues: 1.) whether the ALJ erred in determining that Plaintiff's headaches are not a severe impairment; 2.) whether the ALJ gave appropriate weight to the opinion of Dr. Horwitz; 3.) whether the ALJ properly formulated the RFC. The ALJ did err in the formulation of the RFC, which requires remand of the case. The Court also writes with respect to the first two issues in order to clarify certain problems likely to re-emerge on remand.

### A. Plaintiff's Headaches

Concerning step two, the ALJ wrote, "Through the date last insured, the claimant has the following severe impairments: sequelae of work accident including neck injury, status post-discectomy and anterior fusion with screws. . . . The claimant's headaches are a 'non severe' impairment." Tr. 15. This finding is internally inconsistent because the headaches were one of the "sequelae" of the neck injury.

Dr. Rosenblum, Plaintiff's surgeon, noted that Plaintiff had "cervicogenic headaches." Tr. 270. Dr. Horwitz described them as "post-traumatic headaches." Tr. 487. Plaintiff's own testimony and statements to his doctors make it clear that the headaches result from tension that builds up in his neck. Tr. 42. ("I wake up with severe tension headaches."). These complaints of neck-related headaches began even before the surgery. *See*, *e.g.*, Tr. 372. Thus, the ALJ's classification of the headaches as a non-severe impairment, separate from the "sequelae" of the neck injury, creates an internal inconsistency in the ALJ's decision. This inconsistency should be resolved on remand.

### B. Weight Given to Dr. Horwitz's Opinion

Dr. Horwitz opined that Plaintiff did not have the ability to perform any substantial gainful employment. Tr. 488. Plaintiff argues that the ALJ did not give this opinion the appropriate weight.

Because the opinion that Plaintiff could not perform any substantial gainful employment is not a "medical opinion," it is not entitled to any weight. The ability to perform substantial gainful employment is an administrative determination reserved for the Commissioner. SSR 96-5p.

Medical opinions are critical for establishing the clinical symptoms and functional limitations of an individual. The regulations define "medical opinion" as "statements from a physician that reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, as well as physical or mental restrictions." 20 C.F.R. § 404.1527(a); 20 C.F.R. § 416.927(a); SSR 96-5p. Under 20 C.F.R. § 404.1527(e) and § 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.[3]

The Social Security Administration has further stated:

> Medical sources often offer opinions about whether an individual who has applied for . . . disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p.

The ALJ did acknowledge that Dr. Horwitz made his non-medical opinion, however he did not give it controlling weight, and there was no legal requirement that he do so. Tr. 17.

Plaintiff also complains that the ALJ gave Dr. Fechner's medical opinion more weight than Dr. Horwitz's medical opinion. To the extent this is true, it is an error. Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the

---

[3] Administrative findings reserved for the Commissioner include: 1.) whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings; 2.) what an individual's RFC is; 3.) whether an individual's RFC prevents him or her from doing past relevant work; 4.) how the vocational factors of age, education, and work experience apply; 5.) whether an individual is "disabled" under the Act. SSR 96-5p.

supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c). In this case, Dr. Fechner's medical opinion is entitled to less weight than Dr. Horwitz's medical opinion because Dr. Fechner never examined the Plaintiff whereas Dr. Horwitz did.

### C. The RFC Formulation

Plaintiff argues that the ALJ erred in the RFC formulation by not limiting Plaintiff's head movements to one third of the day. The issue, ultimately, is a question of whether the ALJ properly discredited Plaintiff's testimony about durational limits on his neck movement.

This argument arises out of the ALJ's colloquy with the VE regarding the second and third hypotheticals. The second hypothetical claimant had plaintiff's age, education, and experience but could only turn his head forty degrees to the right, forty-five degrees to the left, and with forty degrees of flexion. *Id.* The VE testified that this person could perform jobs available in the national economy such as decal applier, inspector, ticketer, and sorter. Tr. 93-94. Plaintiff's counsel then proposed adding an additional limitation to the second hypothetical; that the individual could only move his head occasionally, or one-third of the workday. Tr. 95. The ALJ adopted this variation as the third hypothetical. Tr. 96. The VE testified that the third hypothetical person would not have the RFC to perform any jobs in the national economy. *Id.* Ultimately, the ALJ found that claimant was not disabled because he had the same RFC as the second hypothetical claimant.

Plaintiff argues that the ALJ ignored Plaintiff's own testimony about limits on the amount of time that the Plaintiff could keep his head bent or turned, as one does when reading or using a computer. When asked if he could move his head side-to-side, Plaintiff replied, "[y]es, I could move, but not, not much at all." Tr. 43. On clarifying, Plaintiff stated:

> I can move down and up, but I can't hold it up and lower it down. Like I can't read nothing, I got to put it in front of me. If I'm reading an article or something I can't look down there, my neck just, it's too tight. It feel like 40, 50 pounds on me, so I got to look straight up if I got to read something.

Tr. 45. Similarly, Plaintiff had testified that he could not perform his desk job at Lowe's because he became too stiff to move after an hour of desk work. Tr. 37.

Plaintiff told at least one doctor in the emergency room that moving his head exacerbated his symptoms. Tr. 446-447.

The ALJ did not explicitly explain why he discredited Plaintiff's testimony or the medical records noting that Plaintiff's symptoms were aggravated by head movement. The ALJ simply concluded the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." Tr. 16.

An ALJ must determine the extent to which Plaintiff's subjective complaints of pain interfered with his ability to work. 20 C.F.R. § 404.1529(c); SSR 96-8p. An ALJ must give serious consideration to the claimant's subjective complaints of pain, even though those assertions are not fully confirmed by the objective medical evidence, *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986). However, the ALJ is not bound to accept unquestioningly the credibility of such subjective evidence. *Valdora v. Comm'r of Soc. Sec.*, No. CIV.08-5519 (JBS), 2009 WL 4126194, at *13 (D.N.J. Nov. 23, 2009) (*citing Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ may "evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (*quoting Bolton v. Secretary of HHS*, 504 F. Supp. 288 (E.D.N.Y. 1980)). In the end, the ALJ must indicate the basis for conclusions that the claimant's testimony is not credible.  SSR 96-7p.

Here, the ALJ does not articulate a satisfactory basis for excluding the durational limitations on Plaintiff's neck movement. The ALJ relies upon Dr. Fechner's review of positive post-operative reports from 2007. Tr. 17. But this reliance on post-operative reports ignores Dr. Dennis's 2008 prognosis that the stability Plaintiff experienced after surgery was "more likely than not" temporary. Tr. 408. Dr. Dennis, who examined the Plaintiff, believed Plaintiff had a "permanent pathology" from which he would "never escape." Tr. 408. And indeed, Plaintiff quit working about a year after that prognosis. Plaintiff complained to Dr. Potashnik in Novmeber 2009 that his condition was getting worse. Beginning in June 2010, Plaintiff began to experience what the ALJ characterized as "acute flare-ups of chronic cervical strain." Tr. 17. Between June 2010 and February 2011, Plaintiff had to go to the emergency room four times for neck pain. Here, the Plaintiff explained that the pain was exacerbated by movement of the neck. Tr. 446-447.

One of Plaintiff's 2010 emergency room records states that Plaintiff had "full motion of the neck without pain in all planes." The ALJ cites this as evidence

discrediting Plaintiff. This statement is not substantial evidence undermining Plaintiff's credibility. Given that the ALJ concluded Plaintiff did *not* have full range of motion of the neck, it is contradictory for him to then use this emergency room document stating that he had a full range of motion to discredit him. More importantly, the emergency room statement that Plaintiff's neck was "without pain" contradicts the very purpose of that emergency room visit. The only rational conclusion is that this medical statement is a mistake or needs more explanation.

Also, the ALJ ignored Plaintiff's emergency room complaint that moving his head made his condition worse. Tr. 446-447.

Thus, substantial evidence did not support the ALJ's discrediting Plaintiff's statements about the intensity and limiting effect of his symptoms. The ALJ's choice to credit Plaintiff's post-operative condition in 2007 over his obviously deteriorating condition in 2009, 2010, and 2011 is unexplained. The ALJ cited no reason for overlooking Dr. Dennis's prognosis or the way in which that prognosis apparently manifested itself to be true. He cites no basis for overlooking Dr. Potashnik's observation that Plaintiff's pain returned a few months after the surgery. In short, substantial evidence does not support the ALJ's decision to discredit Plaintiff's complaints that moving his head exacerbated his symptoms.

With the RFC inadequately formulated at step four, the Court cannot affirm the Commissioner's decision that Plaintiff is not disabled.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and **REMANDED** for further proceedings in accordance with this Opinion. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 4, 2015**